Good morning, your honors. May it please the court. At this time, the appellant will not be requesting any time for rebuttal. Your honors, I've set forth my argument fairly succinctly in my papers, but I'd like to focus on the fact that the district court erred when it granted the appellee his motion for summary judgment based on qualified immunity. And I'd like the court to focus on the circumstances, the totality of the circumstances surrounding this particular incident. And I think the district court assessed, you know, the amount of force that was used here, and I think that there's clearly a question for the jury to determine whether or not this was in fact excessive. And if you look at the facts with respect to the events leading up to the shooting here, I think that you'll find also that it is a question of fact for the jury to determine whether or not this was excessive force. And I'd like the court to focus on is the fact that my client, the decedent, was stopped in front of a drug house. That's unquestioned. At that point in time, there was a request by defendant Merrill to search the vehicle, which didn't produce anything. Defendant Merrill then informed the decedent that he was going to seize the car as part of a forfeiture action based on some sort of ordinance violation. And at that point in time, as you can see from the record, my client panicked. He was in fear that his wife would be leaving him. And I think if you look at those circumstances, it wasn't necessary at that point in time to escalate the situation. And defendant Merrill clearly escalated the situation by informing my client he was going to seize the vehicle, that he was going to impound the vehicle. And at that point in time, and the record is fairly clear, I didn't develop it. You claim he had no authority to impound the vehicle? No, Your Honor. Judge Griffin and I don't question that at all. I believe that he did at that point. So you say he escalated the situation. I mean, if he simply enforced the law, I don't understand what the escalation is. Judge Griffin, the escalation is when questioned during his deposition whether or not he could have issued a ticket. Okay. He could have done something else. But what he did was legal. I mean, you're faulting him for doing something legally part of his job? I mean, I don't quite understand the argument. No, Your Honor. The argument is this, that in this situation, when an officer is questioning the decedent in this case, you look and you say, could he have issued a ticket? And I understand your point that he was acting within his rights to suggest that he could take the vehicle or seize the vehicle as part of a nuisance violation. Is it objectively unreasonable for him to lawfully perform the duties of his job? No, Your Honor. How do you put this into a legal argument? Yes, he could have done something less, but how is that legal? Or how does that pertain to an issue in the case? Well, I think if you look at his deposition testimony, he clearly stated that once the ticket was issued and my client started to pull away, that he could have re-instituted a second stop rather than shooting my client. A second stop? Aren't you leaving out some of the events the officer grabbed onto the side of the vehicle and that sort of caused things to unravel into subsequent events, including the shooting? Did you argue that on a ticket offense like this, the officer perhaps should not have grabbed hold of the vehicle and held onto the vehicle as it was trying to get away when the officer had the information, all the information about the driver and they could have arrested him subsequently. They didn't have to use the word escalate but permit the matter to escalate to the point that there was a shooting. I'm not sure if you framed your argument below in those terms or in some other way. If that's not your argument, please let me know. Judge Clay, that's exactly my argument. That you have, again, you look at the circumstances, you have a nuisance violation, you have a compliant person for the most part indicating that he is panicked, that he's concerned about his vehicle being impounded. And to Judge Griffin's point, I'm not suggesting that the officer at that point in time was not acting within his authority. But I think if you look at the circumstances, and again, you could issue a ticket, you could effectuate an arrest at that point if you feel it necessary. But I think the testimony is clear from the deposition that he was going to issue a ticket, impound the vehicle, and you're exactly right, Judge Clay, as far as the escalation of the incident, my guy panics, there is some dispute whether or not he was actually being dragged by the vehicle. Defendant Merrill testified in his deposition that yes, in fact, after he was allegedly being dragged that he could have called and initiated a second stop. And I think that's what's reasonable. Normally a party opposing the grant of a summary judgment motion will argue, well, there are genuine issues of material fact that we need to go to the jury. And the jury has to resolve the following factual disputes. What are the genuine issues of material fact that you claim a jury needs to determine? Whether or not someone who has stopped for a nuisance violation and pulls away from the particular situation where a defendant admits that he could have re-initiated a second stop, whether or not it's excessive, or whether or not he's entitled to call. It sounds like an issue of law. What's the factual dispute that, ladies and gentlemen of the jury, I want you to make a ruling of fact as to this factual dispute. What's the factual dispute that has to be resolved? I understand, Judge Griffin. I think that the factual dispute is whether or not it's unreasonable to shoot at one point blank twice in the chest. Okay. So you say that the ultimate ruling as to the undisputed facts is not an issue of law but an issue of fact and that that should always go to the jury? Yes, Your Honor. Okay. And if you don't have any other questions or need anything clarified? Well, are the factual disputes as to the events that transpired after the officer grabbed hold to the vehicle or is that something you're not presenting on appeal? I guess I'm unclear, Judge Clay, with respect to that question. Well, I mean, the shooting didn't take place until after the officer attached himself to the vehicle and the vehicle was, the getaway was underway and there may have been some lack of agreement as to whether the officer should or could have let go of the vehicle instead of shooting your client and did he have to shoot and all of that. I mean, the shooting didn't take place at the initial stop. I mean, there was some further factual development after the vehicle began to move away from the scene. And so my question is just is there some disputed factual, are there any factual disputes that pertain to the circumstances leading up to and including the actual shooting itself or is that something you're not arguing? No, Your Honor. I think I am arguing that and I think I set that forth in my brief. But if you look at it, there is a factual dispute about the speed, whether or not, again, Defendant Merrill testified in his deposition that he could have, based on the circumstances as they played out, could have reinitiated a second stop. And I think that's key for the court because, again, it shows that there wasn't this very troublesome situation at that point in time that he utilized the use of force that he did and made that choice. When you say he could have initiated a second stop, what do you mean by that? How would he have initiated a second stop? He would have called, Your Honor, and I think, unfortunately, I didn't... Who would have called? Defendant Merrill. He testified in his deposition that he could have made a second or made a call to initiate a second traffic stop. And I think that shows... Made a call to whom? There was another officer there at the scene. That's correct, Your Honor. I'm not sure exactly who he would call, but he testified that he could make a call to have that traffic stop initiated. A call to other police? Is that what you're talking about? Yes, Your Honor. Okay, but you don't have anything else to say about the circumstances of the actual shooting itself, is that it? Just what I've argued, Your Honor. All right. Thank you. Judge Guy had a question. Judge Guy, of course, is participating by telephone. Did you have a question, Judge Guy? I did, but then as much as counsel has left the podium and so forth, it's not necessary. You've covered it well. If you should, because he's certainly available if you want to go ahead. No, no, that's fine. Thank you. Let's proceed. Okay. Good morning. May it please the court. My name is James Surowiec. I represent Sergeant Richard Merrow, and I am here to argue and ask this court to affirm the decision of Judge Lightman, which granted Sergeant Merrow summary judgment based on qualified immunity. I would first start with saying that this case is a tragic case, and I think Judge Lightman started out by stating that, and I think it's important to state that. It's a tragedy for the Alexanders, but it's a tragedy for the officer. There's not one case out there that talks about the impact that these cases have on police officers. It's a terrible thing to have to take a life. It's a terrible thing to have to deal with that, and make no mistake, this is something that weighs very heavily on Sergeant Merrow. You don't just do that and walk away unscathed emotionally and psychologically. It's difficult. I think it's a misnomer to state that Mr. Alexander was executed or shot down for a traffic violation, for failing to signal. I think it's inaccurate to state that Mr. Alexander was shot based on a minor nuisance violation, and Judge Lightman addressed all of those considerations and arguments in his opinion. He, and I say he, I mean Mr. Alexander, made a conscious decision to flee from a scene where his car was being impounded. Sergeant Merrow was allowing him to go to the vehicle to get his personalities out of the vehicle, and he was watching him as he was getting those personalities out, and as he was standing by the car, Mr. Alexander started the car and Mr. Alexander began to indicate, you can't take my car, you can't take my car. There were several warnings yelled by Sergeant Merrow. Stop, please, don't do this, don't do this, and he tried to grab the steering wheel, pushing the wheels towards the curb because there was a car about five to seven feet ahead. His hope was to run that vehicle into that car. Now if Graham v. O'Connor means anything, and they talk about not judging these cases in hindsight because the officers have to make split second decisions as events are rapidly unfolding, it's very easy to talk about what he could have done and what he could have done differently, and as a matter of fact, I would reference the testimony of Sergeant Merrow, which is at document 19-2, page 154, and he's asked the question, you know, could he have done something differently? Why did he use deadly force? His response is this, well, I think if you go back, and I mean, I've thought about it for three years now, different things of what we could have done differently, and I'm sure you could give me, you know, a ton of different things of what I could have done, such as this right here. The bottom line is that my initial reaction was I was trying to get him to rear end the car in front of me. It didn't happen that way. He overpowered me. The vehicle moved out there. I lost my footing, and it was too late to go back and try to start over again. That vehicle was dragging me, and the only alternative means I had was to shoot Mr. Alexander to stop that car so I wouldn't get run over. There is no fact in the record disputing that evidence. Well, what was the officer's explanation in his deposition as to why he didn't simply let go of the car instead of holding on and shooting the decedent? I think that that last passage pretty much sums it up, Judge Clay. It wasn't his intention to shoot him. He didn't start that day out thinking I'm going to go out and shoot a motorist. His intention was to get that vehicle into the car in front of him. It's a reaction. Sometimes you react, right? And somebody throws you something. If you react quickly enough, you catch it. Sometimes something's coming at you. Maybe a car's coming at you, and if you react quickly enough, you can step back, and you avoid that collision. The whole point of Graham is police officers react, and they have split-second reactions, and they don't have the time like we have here to talk about, why did you do this? Why did you do that? They don't have the benefit of deliberating. He made a split-second reaction, and his first reaction was not to grab his gun. His first reaction was to try to stop him and try to open the door. Mr. Alexander kept pulling the door shut, kept pulling the door shut. His testimony's very clear. He was being dragged down the street. There is a civilian witness, who was driving in the opposite direction, and she testified. I'm sorry, she provided a declaration. She wrote a statement out at the scene, and she was very clear. She said, I saw that officer being dragged down the street. I thought he was going to get run over. I heard two shots. I thought the officer was dead. Isn't that the answer to Judge Clay's question? Why didn't he release himself from his grasp of the steering wheel and fall down? He didn't do that, according to his deposition, because he was afraid he was going to be run over by the car. Exactly. And killed. And killed. So he hung on for his own life. Right? That's his testimony, right? That is his testimony. Did the officer have available to himself the option of letting go of the steering wheel of the car and not holding on at the initial time that he was attached to the vehicle when it first began to move? Did he have the option at the outset of letting go of the vehicle? His testimony is, and I guess I would ask you, Judge Clay, at what point are you talking about? When he first grabbed hold of the vehicle and it started to move. I would direct the court's attention to document 19-3, page ID 172. And there are 3-D renderings that illustrate what he was doing. And the first rendering shows him allowing Mr. Alexander back in the car, and that's on page ID 173. The second shows him watching Mr. Alexander as he's going through his glove box, pretending, or at least acting like he's going to get his personalties. What are these renderings? These are drawings that the officer participated in making subsequently? Yes. The third one is showing that he grabbed the wheel with his left hand. Now, if you're asking me, could he have made a different decision and not grabbed that wheel? He's asking you, when the car started moving, why didn't he release his grasp of the steering wheel at that point? I think his answer in the deposition was he lost his footing when the vehicle started moving, isn't that? I think his testimony, quite honestly, was that he thought he could get that car. No, after the car started moving, he lost his footing, right? Correct. At some point. He's not running alongside of the car, hanging on and running at the same time. His feet have been swept away from him, and he's being dragged, right? Absolutely. So he doesn't have his footing after the car starts moving, right? When Mr. Alexander turns that wheel and hits the gas, the first thing that happens is that car bumps into Sergeant Merrill, knocking him off balance. And off his footing? And off his footing. So now he's stumbling and eventually being dragged. It happened. Okay. I have Judge Griffin's understanding, but what is your answer to my question? I apologize, Judge. Could you rephrase the question? Because I don't recall. Could he have let go of the vehicle when it started to move at the outset of all these events? Sure. He could have done a lot of things. He could have just let him drive off, Judge Clay. I mean, there were a number of options that he could have employed. But that goes against what the it's very easy in hindsight to judge the actions of the officer and say that he should have done something differently. He shouldn't have grabbed the wheel. Judge Lightman addressed this specifically in his opinion on page 15. Judge Lightman wrote, moreover, even if Merrill made errors in judgment during the portion of the traffic stop that preceded the shooting, if, for example, his decision to grab the steering wheel was ill advised, an officer who uses deadly force to protect himself or others against an immediate threat of serious physical harm may not be held liable on the ground that he acted recklessly in creating the circumstances which required the use of deadly force. And the case cited there is Livermore xrelrohmvlubelan, citation 476, Fed 3rd 397, jump site is 406. And that's a 2007 Sixth Circuit case. Anything else, Counselor? Nothing. All right. And there was no rebuttal, as I understand. All right. Thank you. And the case is submitted.